UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, Subscribing to Certificate Number 3G04-02597, and SEVEN CORNERS, INC., f/k/a SPECIALTY RISK INTERNATIONAL, INC., Petitioners, vs. HELEN PORTER SIMON, Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) | 1:07-cv-0899-LJM-WTL |

### ORDER ON PETITION IN AID OF ARBITRATION

This cause is now before the Court on Petitioners', Certain Underwriters at Lloyd's, London, and Seven Corners, Inc. (collectively, "Petitioners"), Petition in Aid of Arbitration. Petitioners seek an order that (i) determines the validity and enforceability of an arbitration clause in a health insurance policy issued to Respondent, Helen Porter Simon ("Simon"), (ii) compels Simon to engage in arbitration of the disputed matters pursuant to the arbitration clause, and (iii) grants Petitioners an award of attorneys' fees and costs incurred in seeking the order compelling arbitration.

For the reasons stated herein, the Court **GRANTS** Petitioners' Petition in Aid of Arbitration and hereby orders the parties to resume arbitration of this matter in accordance with the findings in this Order.

## I. <u>BACKGROUND</u>

Respondent, Simon, is a United States citizen who is a resident of St. John, U.S. Virgin Islands. Novak Decl., Ex. B, at 10 ("Novak Ex. B"). In February 2004, Simon purchased a health insurance policy from Specialty Risk International ("SRI"), with an effective date of either February 1, 2004, or February 2, 2004. *Id.* at 10-11. SRI, now doing business as Seven Corners, Inc. ("Seven Corners"), is an Indiana corporation with its principal place of business in Carmel, Indiana. *Id.* at 10. Seven Corners is a Third Party Administrator of insurance policies, including policies underwritten by Certain Underwriters at Lloyd's, London ("Lloyd's"). *Id.* The policy issued to Simon was a Reside® Prime Worldwide Medical Plan and was specifically designed for individuals who reside outside of the continental United States for at least six months out of every year (the "Policy"). *Id.* Lloyd's, located in the United Kingdom, is the insurer under the Policy. *Id.*

The underlying dispute in this matter involves Petitioners' denial of payment of certain medical expenses associated with Simon's surgery and hospitalization related to a bowel obstruction. *Id.* at 9. Simon alleges that Petitioners "acted in bad faith by contriving after-the-fact 'for cause' reasons for the termination of benefits and rescission of the [P]olicy." *Id.*

The Policy contains the following arbitration clause (the "Arbitration Clause"):

**Legal Actions:** Any disputes arising from this Certificate, or its alleged breach, if not resolved by the parties, shall be referred to arbitration by either party. Arbitration shall be conducted in the City of Indianapolis, Indiana, USA in accordance with Commercial Arbitration Rules of the American Arbitration Association. Arbitration shall be the sole remedy for alleged breach of this Certificate. Notices in connection with such arbitration and process in any judicial proceeding in connection wherewith [sic] may be served by personal delivery or registered mail on the Company at Specialty Risk International, Inc. 9200 Keystone Crossing, Suite 300, Indianapolis, Indiana 46240 USA, and on the Insured Person at the most current address appearing on the records of the Company, with the same effect as if personally served in Indianapolis. The Company's liability in any such arbitration shall be limited to such

> amounts as the arbitrators may determine are due under this Certificate, with such interest thereon and such cost of the arbitration proceeding, if any, as the arbitrator may direct.
>
> No actions at law or in equity shall be brought to recover on the Certificate prior to the expiration of sixty (60) days after written Proof of Loss has been furnished in accordance with requirements of this Certificate. No such action shall be brought after expiration of twelve (12) months after the time that written Proof of Loss is required to be furnished.
>
> The laws of the State of Indiana, USA, shall govern any disputes arising from this Certificate.

Novak Decl., Ex. A, at 29 ("Novak Ex. A").

Pursuant to the requirements of the Arbitration Clause, Simon filed a Notice of Intention to Arbitrate (the "Notice"), and a Statement of Claim with the American Arbitration Association ("AAA"). *See* Novak Ex. B. In the Notice, Simon's brief description of the dispute between the parties alleged (i) a breach of Simon's contract for health insurance, and (ii) that the Arbitration Clause is void under Virgin Islands' law. *Id.* at 4. The Notice identified the amount in controversy as approximately $290,000.00. *Id.* Simon's Statement of Claim set forth three separate counts. *Id.* at 12-15. Simon first seeks a declaration by the arbitrator that the Arbitration Clause is "void and unenforceable against [Simon], thereby permitting [Simon] to seek a resolution of her dispute in the Virgin Islands." *Id.* at 13. Second, Simon seeks damages for alleged breach of contract. *Id.* at 14. Third, Simon seeks damages, including punitive damages, due to Petitioners' alleged breach of the duty of good faith and fair dealing. *Id.* at 15.

Following Simon's filing with the AAA, the International Centre for Dispute Resolution acknowledged receipt of the matter and assigned a case manager to the dispute. *See* Novak Decl., Ex. C. On July 11, 2007, the Petitioners filed the instant Petition in Aid of Arbitration seeking a

determination from this Court that the Arbitration Clause is valid and enforceable, an order compelling Simon to participate in arbitration, and attorneys' fees and costs incurred in seeking the order compelling arbitration. On September 27, 2007, this Court granted Petitioners' Motion to Stay Arbitration pending a determination by the Court as to whether the parties agreed to arbitrate arbitrability and, specifically, what issues the parties are contractually bound to arbitrate.

## II. DISCUSSION

### A. THE COURT DECIDES ARBITRABILITY

A threshold question before this Court is whether an arbitrator has authority to determine the validity and enforceability of the Arbitration Clause. The question, in essence, involves whether the Arbitration Clause is arbitrable. The United States Supreme Court has stated that the determination of whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the Court. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (advising further that "[i]t is the court's duty to interpret [an] agreement and to determine whether the parties intended to arbitrate"). Further, a party may not be forced to arbitrate any dispute that the party did not agree to arbitrate. *Id.* at 648. Parties must agree in advance to submit such disputes to arbitration because the agreement is the source of the arbitrator's authority to resolve those disputes. *Id.* at 648-49.

The determination of "whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649; *see also Int'l Med. Group v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 842 (7th Cir. 2002). The Supreme Court further clarified that "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that

they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995) (quoting *AT&T Techs.*, 475 U.S. at 649). *See also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (noting that the question of arbitrability is for judicial determination absent clear and unmistakable evidence to the contrary and recognizing this as a longstanding exception to the liberal federal policy favoring enforcement of arbitration agreements).

In determining whether arbitrability language is clear and unmistakable, the Seventh Circuit noted that the Circuit Courts of Appeals have reached different conclusions with respect to proper interpretations of broad and general arbitration language, with some relying on the "hospitable approach the Supreme Court has taken to arbitration in recent years." *Miller v. Flume*, 139 F.3d 1130, 1134 (7th Cir. 1998). For example, in *Edward D. Jones & Co. v. Sorrells*, the court considered whether a National Association of Securities Dealers' ("NASD") rule was clear and unmistakable. 957 F.2d 509, 514 n.6 (7th Cir. 1992). The pertinent NASD provision stated that "'arbitrators shall be empowered to interpret and determine the applicability of all provisions under this Code which interpretation shall be final and binding upon the parties.'" *Id.* The court found this language insufficient to indicate a clear and unmistakable expression of the parties' intent to submit to arbitration the question of an arbitrator's own jurisdiction. *Id.*

More recently, the Seventh Circuit found that a general arbitration clause did not reach the issue of arbitrability. *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 490 (7th Cir. 2004). At issue in *Oblix* was an arbitration clause that read, in pertinent part, "'any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Agreement, shall be resolved exclusively by binding arbitration . . . in accordance with the rules then in effect of the [AAA].'" *Id.* The court stated that "[t]his is a broad arbitration agreement—not broad enough to

compel the conclusion that arbitrability is itself an arbitrable issue[—]but sufficient to comprise disputes about compensation and employment discrimination." *Id.* (citing *First Options*, 514 U.S. at 943).

The arbitration language in the instant case is similar to the language in *Oblix*. Specifically, it states:

> Any disputes arising from this Certificate, or its alleged breach, if not resolved by the parties, shall be referred to arbitration by either party. Arbitration shall be conducted in the City of Indianapolis, Indiana, USA in accordance with Commercial Arbitration Rules of the American Arbitration Association. Arbitration shall be the sole remedy for alleged breach of this Certificate.

Novak Ex. A, at 29. The Court finds that this language does not clearly and unmistakably make the issue of arbitrability one for the arbitrator. The language, while broad, does not compel the conclusion that the parties intended to submit the issue of the validity of the arbitration clause itself to arbitration. The Supreme Court recognized that the question of arbitrability has a "limited scope." *Howsam*, 537 U.S. at 83. As such, the Supreme Court has found the arbitrability phrase

> applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* The question of the validity of the arbitration clause itself is such a gateway matter and is proper for this Court to decide. Thus, under the guidance of the unanimous opinion in *First Options*, and the Seventh Circuit's opinion in *Oblix*, the Court finds that the parties did not clearly and unmistakably agree to submit the question of arbitrability to arbitration. The issue of the validity of the arbitration clause is one for this Court.

### B. THE CONVENTION ON THE RECOGNITION & ENFORCEMENT OF FOREIGN ARBITRAL AWARDS GOVERNS THE ARBITRATION CLAUSE

The parties contest whether the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), or the McCarran-Ferguson Act (the "MFA"), controls resolution of the dispute regarding the validity and enforceability of the Arbitration Clause. For the reasons that follow, this Court is persuaded that the Convention controls in this matter.

Chapter Two of the Federal Arbitration Act (the "FAA"), was passed by Congress to implement the Convention. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974); *see also* 9 U.S.C. §§ 201-08. The Supreme Court has explained that the Convention's goal and "the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk*, 417 U.S. at 520 n.15.

The FAA specifies that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. Accordingly, original jurisdiction is granted to the district courts of the United States in such matters. *Id.*

The Convention provides, in pertinent part:

> Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> * * *
>
> The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless

> it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention art. 2, *opened for signature* June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997.

A United States court "faced with a request to refer a dispute governed by Chapter Two to arbitration performs a 'very limited inquiry' into whether an arbitration agreement exists and falls within the Convention's coverage." *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 74 (1st Cir. 2000) (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186 (1st Cir. 1982)). The court in *DiMercurio* identified the following four prerequisites to determine whether the Convention applies:

> (1) is there a written agreement to arbitrate the subject of the dispute? (2) does the agreement provide for arbitration in the territory of a signatory of the Convention? (3) does the agreement arise out of a commercial relationship? (4) is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

*Id.* at 74 n.2. *See also Hytran Corp. v. Man Nutzfahrzeuge Aktiengesellschaft*, No. 95 C 2254, 1995 WL 443926, at *1-2 (N.D. Ill. July 24, 1995) (citing *Jones v. Sea Tow Servs. Freeport N.Y., Inc.*, 828 F. Supp. 1002, 1015 (E.D.N.Y. 1993), *rev'd on other grounds*, 30 F.3d 360, 361 (2nd Cir. 1994); *Conseco, Inc. v. Nat'l Union Fire Ins. Co.*, No. IP01-1214-C-Y/K, 2002 U.S. Dist. LEXIS 26554, at *13 (S.D. Ind. Jan. 15, 2002).

Taking the four requirements in turn, first, the parties do not dispute the existence of the written Policy containing the Arbitration Clause. Second, the language of the Arbitration Clause specifies that arbitration is to occur in Indianapolis, Indiana, and the United States is a signatory of the Convention. Third, this Court finds that the agreement arises out of a commercial relationship, specifically, the Policy governs the provision of health care insurance for Simon. *See DiMercurio*, 202 F.3d at 74 (noting that an arbitration clause in an international commercial agreement for

insurance coverage is governed by Chapter Two of the FAA). Fourth, the parties to the Policy are Simon, a United States citizen, and Lloyd's, an English subject. If an agreement satisfies the four prerequisites, as the Policy does, the agreement is enforceable under the Convention unless it is "'null and void, inoperative or incapable of being performed.'" *Id.* at 74 (quoting Convention). It is at this point in the analysis that Simon contends the arbitration provision is void as against the public policy of the Virgin Islands.

Simon argues that because the FAA, in implementing the Convention, does not specifically relate to the business of insurance, the MFA is implicated. The MFA provides, in pertinent part, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Thus, the MFA establishes, with respect to the regulation of the business of insurance, a narrow exception to the general rule that federal law typically preempts conflicting state law.

Simon does not dispute the validity of the Arbitration Clause overall. Rather, Simon contends that the Virgin Islands Code Section 820 (the "Code"), conflicts with the FAA and that under proper application of the MFA, the Virgin Islands' law "reverse preempts" the FAA. The Code provides, in pertinent part:

> No insurance contract delivered or issued for delivery in this territory and covering subjects located, resident, or to be performed in this territory, shall contain any condition, stipulation, or agreement which (i) requires it to be construed according to the laws of any other territory, state or country; (ii) deprives the courts of this territory of the jurisdiction of action against the insurer . . . . Any such condition, stipulation, or agreement in violation of this section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

V.I. Code Ann. tit. 22, § 820 (2007).

9

Simon argues that the requirements of the Arbitration Clause are in direct conflict with the Code because they require any disputes to be arbitrated in Indianapolis, Indiana, and to be governed by the laws of the State of Indiana. Thus, Simon argues that under Virgin Islands law the Arbitration Clause is unenforceable and the FAA is reverse preempted by the MFA. The Court does not agree.

The Supreme Court has stated that the "starting point in a case involving construction of the [MFA], like the starting point in any case involving the meaning of a statute, is the language of the statute itself." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 (1979). Under the plain language of the MFA, the Virgin Islands, a United States territory, is not defined as a "state" for purposes of the MFA. The MFA provides that, "As used in this chapter, the term "State" includes the several States, Alaska, Hawaii, Puerto Rico, Guam, and the District of Columbia." 15 U.S.C. § 1015. The MFA definition expressly includes two United States territories, Puerto Rico and Guam, while excluding the United States territory of the Virgin Islands.[1] Therefore, under the principle of *expressio unius est exclusio alterius*, the exclusion of the Virgin Islands from the express statutory definition of the term "state" for purposes of the applicability of the MFA, raises a strong inference that the MFA does not apply to the territory of the Virgin Islands.

Although Petitioners argue that the MFA is superseded by the Convention because the Convention is applicable to international commerce while the MFA is limited to interstate commerce, *see, e.g.*, *Antillean Marine Shipping Corp. v. Through Transp. Mut. Ins. Ltd.*, No. 02-22196-CIV, 2002 WL 32075793, at *3 (S.D. Fla. Oct. 31, 2002) (finding that the MFA is not applicable to international insurance contracts made under the Convention because the MFA was

---

[1] The Court notes that the United States purchased the U.S. Virgin Islands in 1917; the MFA was enacted in 1945.

intended to only apply to interstate commerce rather than foreign commerce), the Court need not decide the full scope of the MFA to resolve this dispute. The Court finds the policy reasoning articulated by the court in *Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. I, Inc.*, persuasive in this matter. 466 F. Supp. 2d 1293, 1303 (N.D. Ga. 2006). In *Goshawk*, the court determined that the Convention supersedes the MFA with respect to the enforcement of an international arbitration clause based on the "strong international policy [the Convention] expresses in favor of enforcing commercial arbitration agreements." *Id.* at 1303 n.8. The *Goshawk* court stressed the intention of the Convention to unify the standards through which international arbitration agreements are enforced and observed. *Id.* at 1304 (citing *Scherk*, 417 U.S. 520 & n.20). The court reasoned, in part:

> [T]his Court's conclusion that the Convention prevails over the [MFA] is consistent with the policies recognized in the context of international commerce that strongly favor enforcement of arbitration clauses. *See, e.g., Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1294 (11th Cir. 1998) (noting importance of respecting international comity and ensuring the orderliness and predictability that are essential to any international business transaction in enforcing international agreement). Indeed, on at least three occasions, the Supreme Court has relied on the strong policy of international comity and predictability in enforcing an international agreement. . . . And on two of these occasions, the Court has enforced an international arbitration agreement *even though a similar agreement would be unenforceable in the domestic context.*

*Id.* at 1306 (emphasis by *Goshawk* court) (citations omitted). On one of those occasions referenced in *Goshawk*, the Supreme Court expressed that:

> concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985).

11

In summary, the Court is persuaded that the Convention supercedes the MFA. There is a strong inference that the Virgin Islands is not defined as a "state" for purposes of the MFA and, as such, the MFA and the laws of the Virgin Islands do not reverse preempt the Convention in this instance. Moreover, there is a strong preference, as articulated by the Supreme Court, for recognition of international agreements to properly promote interests of comity and predictability in the enforcement of such agreements. Therefore, this Court finds that the FAA, as it implements the Convention, governs the Arbitration Clause. The Arbitration Clause is valid and enforceable under the FAA and the Convention and the parties are compelled to arbitrate the underlying disputes in this matter.

### C. ATTORNEYS' FEES AND COSTS

Petitioners claim that they are entitled to attorneys' fees and costs in connection with their efforts to compel Simon to arbitrate and to enforce the Arbitration Clause. "In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification . . . or if the party resisting arbitration did not have a 'reasonable chance to prevail.'" *Chauffeurs, Teamsters & Helpers v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3rd Cir. 1980) (citations omitted).

The Court concludes that this is not a case in which attorneys' fees and costs should be awarded. Simon did not act "without justification" in seeking to have the arbitrator decide the validity and enforceability of the Arbitration Clause. Rather, Simon attempted to abide by the terms of the Policy, which was drafted by Petitioners, by submitting the issue of arbitrability to the arbitrator for resolution. While it has been determined by the Court that such a gateway issue is not

an arbitrator's to decide, Simon's argument was not without merit. Further, although ultimately unsuccessful, Simon raised a reasonable argument as to the validity of the Arbitration Clause in her reliance on the MFA's applicability to the Policy. As such, the Court finds that an award of attorneys' fees and costs is not appropriate based on Simon's reasonable chance of prevailing in this matter.

### III. CONCLUSION

For the reasons stated herein, Petitioners', Certain Underwriters at Lloyd's, London, and Seven Corners, Inc., Petition in Aid of Arbitration is **GRANTED**. Petitioners' request for attorneys' fees and costs is **DENIED**. The Arbitration Clause in the Policy is valid and enforceable. The Stay of Arbitration granted by this Court is hereby **LIFTED** and the parties are ordered to resume arbitration of the underlying disputes in this matter in accordance with the findings in this Order. This matter is **CLOSED**.

IT IS SO ORDERED this 18th day of October, 2007.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Nelson D. Alexander
LOCKE REYNOLDS LLP
nalexander@locke.com

David J. Cutshaw
COHEN & MALAD LLP
dcutshaw@cohenandmalad.com

Neal R. Novak
LAW OFFICES OF NEAL R. NOVAK, LTD.
novak@novakjuris.com

Jere A. Rosebrock
COHEN & MALAD LLP
jrosebrock@cohenandmalad.com